Sharpe v. Allen.

5L  81
3pi 131

NANCY SHARPE v. GREENE ALLEN et al.

1. WILL. *Construction. After-acquired property.* Allen executed a will, the third clause of which is as follows: "I have some real and personal property, and I do hereby make the following disposition of it: 1st. I have a tract of land, of two hundred and fifty acres, lying on the south side of French Broad River, between the lands of William Burnett and the mouth of Wolf Creek, which I hereby give and bequeath to my two sisters, Emily Allen and Cynthia Cowan, and to their heirs forever; the title to which is hereby vested in them. 2d. I have an undivided interest in the real and personal estate of my father and mother, aside from some other personal property in my own right, all and singular of which I do hereby give and bequeath the same to my said two sisters, Emily Allen and Cynthia Cowan, and to my brother, Greene Allen, jointly to share and share alike in the same." *Held,* that after-acquired property did not pass under the will.

2. SAME. *Same.* A will speaks from the death of the testator, and not from its date, unless its language, by fair construction, indicates a contrary intention; but when a testator refers to an actually existing state of things, his language should be held as referring to the date of the will, and not to his death, as this is then a prospective event.

FROM COCKE.

Appeal from the Chancery Court of Cocke county. H. C. SMITH, Ch.

O. C. KING for complainant.

W. J. McSWEEN and McFARLAND & DICKSON for defendants.

DEADERICK, C. J., delivered the opinion of the court.

6—VOL. 5.

On the 5th day of December, 1864, G. W. Allen executed his will, by which he gave certain property, real and personal, to his two sisters, Cynthia and Emma, and his brother, defendant Greene.   He afterwards acquired other property, real and personal, and died in 1876, leaving as his heirs-at-law and distributees, complainant and defendants.

The bill is filed by complainant, a sister of the testator, exhibiting the will, and claiming that, as to the property acquired by testator after its execution, he died intestate, and that she is entitled to a share thereof, which she seeks to have decreed to her.

Defendants, Greene, Cynthia and Emma, demur to the bill, upon the ground that the will exhibited shows that the testator did not die intestate as to any of his property, but that they are entitled, under said will, to all left at his death.

The Chancellor overruled the demurrer, and the defendants have appealed to this court.

The first clause of the will gives directions as to his burial.   The second directs that his debts shall be paid out of his personal property.   The third is as follows:   "I have some real and personal property, and I do hereby make the following disposition of it:   1st. I have a tract of land, of two hundred and fifty acres, lying on the south side of French Broad River, between the lands of Wm. Burnett and the mouth of Wolf Creek, which I hereby give and bequeath to my two sisters, Emily Allen and Cynthia Cowan, and to their heirs forever;   the title to which is hereby vested in them.   2d. I have an undivided

interest in the real and personal estate of my father and mother, aside from some other personal property in my own right, all and singular of which I do hereby give and bequeath the same to my said two sisters, Emily Allen and Cynthia Cowan, and to my brother, Greene Allen, jointly to share and share alike in the same." The next and last clause appoints his brother Greene executor.

The language above quoted is all that the will contains purporting to dispose of his property by the testator; and the question is, does this will dispose of the property of testator acquired by him after its execution.

By the act of 1842 it was provided, "that any estate or interest in lands acquired by a testator after making his will, of which he died seized and possessed, shall pass thereby in like manner as if owned by him at the making of his will, if such clearly appears by the will to have been the testator's intention."

And it was held by this court, in *Wynne* v. *Wynne,* 2 Swan, 405, that the language, "I give to my much-beloved wife, Micha Wynne, all the balance of my property, both real and personal, to have and to hold to her own benefit, to the exclusion of all others," clearly manifested the testator's intention that his wife should take the lands acquired by him after the execution of his will.

Before the passage of this act, lands acquired after the making of a will did not pass under it, although the testator might have so intended and directed. But this act authorized a testator to pass, by his will,

after-acquired lands, by showing clearly in the will that such was his intention. This act, however, is not brought into the Code; but the act of 1851–2, Code, sec. 2195, seems to have taken its place. It provides that "a will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, and shall convey all the real estate belonging to him, or in which he had any interest at his decease, *unless a contrary intention* appear by its words and context."

By the act of 1842, after-acquired realty could only pass by showing clearly such was the testator's intention.

By the act of 1851–2, Code, sec. 2195, after-acquired realty shall pass by the will, unless a contrary intention appear by its words and context.

The intention of the testator is to be ascertained by giving to the language employed by him a fair and reasonable interpretation.

He says: "I have some real and personal property, and I do hereby make the following disposition of it: 1st. I have a tract of land of 250 acres," describing it, "which I hereby give," etc. "2d. I have an undivided interest in the real and personal estate of my father and mother's estate, *aside* from some other personal property in my own right, all and singular of which I do hereby give to my two sisters, Emily and Cynthia, and brother Greene, *jointly to* share and share alike in the same."

It will be observed that testator, when he comes

to dispose of his property, sets out by saying, "I have some real and personal property, and I do hereby make the following disposition of it," and then proceeds to dispose of a tract of land to his two sisters, and an undivided interest in land and personalty derived from his father's and mother's estate, and personalty which he claims in his own right.

The reasonable construction of this language is, that testator, at the time of making his will, had, that is, held in possession, as his own, certain real and personal property, which he disposed of by giving a tract of 250 acres of land, part of said property which he then had, to his two sisters, and then the undivided interest he held and owned in his father's and mother's estate, as well as such personal property as he then held in his own right, as contradistinguished from that which he derived from his father's and mother's estate, to his two sisters and brother Greene. Such, we think, is the obvious meaning of the language employed. He says, "I have," etc., meaning "I hold now," possession or control of the property specified; and this language is applied expressly to the 250 acres of land, the undivided interest in his parents' estate, and, by a reasonable and grammatical construction, with equal force and directness to the personal property which is in his own right. This language, in relation to personal property held in his own right, certainly cannot reasonably be held to apply to other personal property which he did not own or hold at the time, but which he might thereafter acquire, much less can anything in either clause be held to convey any

other land than such as is specifically mentioned. If so, to whom does it go, and under which clause does it pass?

The words and context can bear no other reasonable construction than that testator had, at the time of making the will, a present, existing right to the property mentioned, which he then proposed to dispose of.

In 1 Red. on Wills, it is said a will speaks from the death of the testator, and not from its date, unless its language, by fair construction, indicates a contrary intention. Hence, a devise of realty and bequest of personalty generally carries all a testator had at his death. But when, he adds, a testator refers to an actually existing state of things, his language should be held as referring to the date of the will, and not to his death, as this is then a prospective event. pp. 370–80.

In this case, the testator says: "I have some real and personal property, and I do hereby make the following disposition of it: I have 250 acres of land, and give it," etc. "*I have* an undivided interest," etc., "and some personalty, which I give," etc.

Does not this language plainly mean that testator then owned the property mentioned, thus referring to an actually existing state of things, and, according to the authority just cited, and sound reason, showing that it was not the intention of testator that his will should pass after-acquired property, but that only which he had. The property disposed of was that which testator then had, and there is no language in the

will which can be reasonably construed as disposing of any other than that specified and described.

It follows that the Chancellor's decree was correct, and it will be affirmed, and the cause will be remanded for answer and further proceedings. Appellants will pay the costs of this court.

FREEMAN, J., delivered the following dissenting opinion, McFARLAND, J., concurring:

The construction of the will of G. W. Allen, deceased, is the matter of this litigation. It is as follows: After providing for the payment of his debts, and for his burial, out of his personal property, in the first two clauses, the third clause is as follows: " I .have some real and personal property, and I do hereby make the following disposition of it: 1st. I have a tract of land, of 250 acres, lying on the south side of French Broad River, between the lands of Wm. Burnett and the mouth of Wolf Creek, which I hereby give and bequeath to my two sisters, Emily Allen and Cynthia Cowan, and to their heirs forever, the title to which is hereby vested in them. 2d. I have an undivided interest in the real and personal estate of my father and mother, *aside from some other personal property in my own right,* all and singular of which I do hereby give and bequeath the same to my said two sisters, Emily Allen and Cynthia Cowan, and to my brother, Greene Allen, jointly, share and share alike in the same."

This will was made in 1864. The testator died

in 1876.   The testator acquired considerable lands and personal property after making this will—the lands not included in the description of the land mentioned in the will; the personalty consisting, among other things, of bonds secured by mortgage, notes and money.

The question is, did this after-acquired property pass under the will, or did he die intestate as to it?

Under the title, "effect of events subsequent to the execution of wills," sec. 2195 of the Code, it is provided that "a will shall be construed, in reference to the real and personal estate comprised in it, to *speak* and take effect as if it had been executed immediately before the death of the testator, *and* shall convey all the real estate belonging to him, or in which he had any interest at his decease, unless a contrary intention appear by its words and context."

This gives the rule of construction, in reference both to real and personal estate—that is, "it shall speak and take effect as if it had been executed immediately before the death of the testator," as to both kinds of property comprised in the will, and shall convey, even as to realty, all he owns at the time it speaks, that is, at his death, unless a contrary intention appear by *its* words and context." The law fixes that all his property passes, unless the words and context of the will itself shows the contrary.

As to the realty, this intention to the contrary is clearly made out from the language and context. He gives a specific tract of 250 acres, locating it specifically, to his two sisters. Second, he says, I have an undivided interest in the real and personal estate of

Sharpe *v.* Allen.

my father and mother, *aside* from some other personal property in my own right, all and singular of which "I do hereby give and bequeath" to said sisters and his brother, Greene Allen, etc.

Now, let us construe this clause as *speaking* at the death of the testator, and see if we can find any of the property in it excluded by the "words and context" from its operation.

He is to be looked at as giving to these parties his property such as is enumerated, at that time, and all is by law given unless the contrary appears. Fix this date in the mind, and read the clause, "I have now, in 1876, an undivided interest in the real and personal estate of my father and mother, and I give this to my sisters and my brother." This is clear; the property is designated, and cannot be misunderstood. He then adds: "Aside from some other personal property in my own right, all and singular of which I hereby give," etc. *Aside*, that is, in addition to, or beside the interest in my father's and mother's estate, I have some other personal property in my own right, and this is given, as the interest I own in my father's and mother's estate is given, to said sisters and brother. What is there in this language to limit the personalty included in the last quoted clause? Nothing, that we can see. He first gives, specifically, the undivided interest in both kinds of property in this estate, and then all the other personal property he owns in his own right is likewise disposed of to the same parties. This language certainly includes all the other personalty he has at the

time the will speaks, for he divides it distinctly into
two classes, that from his father's and mother's estate,
and "aside," or in addition, the other personal prop-
erty owned in his own right. You can only limit
this so as to exclude the entire personalty owned by
him at this, the time the will speaks, by remember-
ing that the will was made in 1864, instead of 1876.
If you construe it to "speak and take effect" in
1864, then it would dispose of only what he then
had. But this is precisely what the law says you
shall not do; but shall construe it as speaking im-
mediately before his death. If construed as speaking
in 1864, we would say at once he could only give
what he then had in his own right. But when we
take the rule prescribed by the statute, and say it
speaks in 1876, then its language means, I to-day
give my interest in my father's and mother's estate,
both real and personal, and aside from that, I now
have some other personal property in my own right,
and that property, so owned now in 1876, just as I
am going to die, I also give to my sisters and brother.
How much personalty owned in his own right is not
stated, but all he owns, aside from the interest in the
father's estate, in his own right, is certainly given—
when, at the date when the will speaks, that is what
he owned in his own right then. What did he own
in his own right then? Bonds, mortgages and money,
with other personalty. We have but to find out
what it is at this date, and he has disposed of it.
If he did not own it in his own right, or had any
personalty held in right of another, it would be ex-

Sharpe *v.* Allen.

cluded by the language, and not pass, because the contrary intention appears, and the gift only includes what he owns in his own right, and excludes what he may own in right of another. It is not pretended that at his death he owned any property in right of another, or did not own all the personalty he possessed in his own right; if so, all such property is inevitably disposed of by the language used.

The only real question, it seems to us, is, what did he own immediately before his death, and is any of such personalty *excluded* by the words of the will? No such exclusion is found, and therefore all goes by the gift, owned in his own right. We can only avoid this conclusion by construing the language as speaking, not at his death, but at the time of making his will, and this is to disregard the law as it is written. It is argued that the third clause changes all this, and points to the real and personal estate *then* owned by testator, that is, when the will was made. This may be conceded; but here the error is the same, in not construing this language to *speak* immediately before the death of the testator. Only apply this rule, arbitrary as it is, but imperative nevertheless, and the difficulty is solved.

But read the language—"I have now, in 1876, some real and personal property, and I hereby, at this time, make the following disposition of it"—and you are compelled to have him, by this act, about to dispose of all this property at this time, and so the entire estate would be disposed of, or is purposed to be disposed of; and then the after language

speaks from the same date, and all would go, unless a contrary intention is found in words or context. The contrary intention does appear, as to the realty, for a specific portion is alone designated as given, and to specified parties, the expression of the one thing excluding the other. But when we come to the personalty, it is all, *aside* from what he gets from his father's and mother's estate, and no specific designation of any part, which can exclude by possibility any other part not thus given. The words "all and singular," make this construction still stronger, instead of militating against it, because these words of necessity include all the beforementioned property, to-wit, the undivided interest in the real and personal estate from his father and mother, and also the other property owned in his own right, "all and singular" of which he gives to the sisters and brother. What property is this? The law says the will speaks *immediately* before his death. Then, all and singular of the above property, to-wit, the interest from the father's estate, and *aside,* or beside, and in addition, such other personal property as he owned then in his own right. If this does not include all he has when the will speaks, then language cannot, as we think, be found that will; but to avoid the conclusion, the language must furnish the exclusion itself. What are the words, or what the context, that does this, we are unable to see. Nothing guides to such a conclusion, except the fact that the will was made in 1864; and it seems to us we can only reach the opposite conclusion by making it speak at this date, and not at the date

SEPTEMBER TERM, 1880.     93

fixed by the law, that is, immediately before the death of testator.

For these reasons, I dissent from the conclusion of the majority of the court.